# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARIA ALICEA,
*Plaintiff*,

v.

JOSEPH GANIM,
*Defendant*.

No. 3:23-cv-1018 (VAB)

## RULING AND ORDER ON PENDING MOTIONS

Maria Alicea ("Plaintiff") has sued Bridgeport Mayor Joseph P. Ganim ("Mayor Ganim" or "Defendant") for alleged mismanagement of and failure to adequately oversee various functions of city government, including the Bridgeport Police Department (the "BPD"), and injuries stemming from an encounter with the BPD. Civil Complaint at 4–9,[1] Ex. 1 to Not. of Removal, ECF No. 1-1 (July 28, 2023) ("Compl."). Ms. Alicea seeks $250,000 in damages, as well as injunctive relief. *Id.* at 8; Mot. for Injunctive Relief and Request for Hrg., ECF No. 15 (Sept. 27, 2023).

Ms. Alicea has moved for an entry of default against Mayor Ganim under Federal Rule of Civil Procedure 55(a). Am. Mot. for Default J., ECF No. 18 (Oct. 15, 2023). Ms. Alicea has also moved for a preliminary injunction and for contempt. *See* First Mot. for Prelim. Inj., ECF No. 33 (Mar. 7, 2024); First Mot. for Contempt, ECF No. 26 (Nov. 29, 2023); Second Motion for Contempt, ECF No. 36 (Mar. 12, 2024); Fourth Mot. for Contempt, ECF No. 44 (Mar. 26, 2024); Fifth Mot. for Contempt, ECF No. 47 (Mar. 29, 2024).

Mayor Ganim has moved for judgment on the pleadings, on the basis of *res judicata* and

---

[1] When ECF-generated page numbers differ from internal page numbers, the ECF-generated page numbers are used.

collateral estoppel; failure to state a claim upon which relief can be granted; lack of standing; and lack of timeliness. Mot. for J. on the Pleadings, ECF No. 30 (Jan. 2, 2024) ("Mot.").

The Court addresses these pending motions herein.

For the following reasons, Ms. Alicea's motion for default judgment is **DENIED**. The motions for contempt, and motion for preliminary injunction are **DENIED as moot**.

Mayor Ganim's motion for judgment on the pleadings is **GRANTED in part and DENIED in part**. The case will proceed as follows:

Ms. Alicea's claims relating to Mayor Ganim's alleged mismanagement of Bridgeport, her sister's death, and the probate system are **DISMISSED with prejudice**.

Any substantive due process claims arising from the incident on July 3, 2020 are **DISMISSED with prejudice** under the doctrine of *res judicata*.

Any equal protection claim arising from the incident on July 3, 2020 is **DISMISSED without prejudice to renewal**, provided that Ms. Alicea can amend her claim to cure the deficiencies noted in this Order.

Ms. Alicea's claim under the Americans with Disabilities Act is **DISMISSED without prejudice to renewal**, provided that Ms. Alicea can amend her claim to cure the deficiencies noted in this Order.

Ms. Alicea's tort claims are **DISMISSED without prejudice to renewal**, provided that any Amended Complaint alleges a viable federal claim arising from the July 3, 2020 incident, and provided that she can amend her claims to cure the deficiencies noted in this Order.

To the extent that Ms. Alicea can remedy the deficiencies identified herein for any of the claims not dismissed with prejudice, she will have until **May 31, 2024** to file an Amended Complaint. If an Amended Complaint is not filed by **May 31, 2024,** and no leave has been

sought to extend that time period before that date, the Court will dismiss all of her potentially

remaining claims with prejudice and direct the Clerk of Court to close this case.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

Ms. Alicea is allegedly an individual with disabilities, inluding a traumatic brain injury.

*Id.* at 5; First Mot. to Enforce J. at 3, ECF No. 41 (Mar. 15, 2024) ("Second Mot. to Enforce

J."[2]).

 Ms. Alicea allegedly once lived at 325 Lafayette St., Building 4 in Bridgeport from 2016

until February 2023. Compl. at 4.

Ms. Alicea allegedly voted for Mayor Ganim in the election before his first term as

mayor of Bridgeport. *Id.*

Mayor Ganim has allegedly poorly managed various city functions and agencies,

including the BPD, the Public Housing Department, the Probate Court, the Parks and Recreation

Department, the Department of Education, and the Department of Children and Families. Compl.

at 4–5; First Mot. to Enforce J. at 2, ECF No. 43 (Mar. 18, 2024) ("Third Mot. to Enforce J.").

Mayor Ganim has further "shown a lack of care, concern, job responsibilities" and has "ignore[d]

the safety of [Bridgeport] civilians in his elected position." Form 26(F) Report of Parties'

Planning Meeting at 2, ECF No. 12 (Sept. 26, 2023) ("Rule 26(f) Report").

Mayor Ganim's poor management of the city of Bridgeport has allegedly led to increased

gun violence and crime, a fentanyl epidemic, and pervasive misconduct by the BPD, including

the alleged murder of Jason Negron, a 15-year-old child, by BPD Officer James Boulay. *Id.*;

---

[2] Ms. Alicea filed several motions to enforce judgment following her motion for default judgment, ECF No. 18. The titles of the motions do not correspond to the motions themselves (e.g., this motion is entitled First Mot. to Enforce J. but it is, in fact, the second such motion filed). Accordingly, the Court has created an alternative shorthand for each motion, which will be noted in a parenthetical and then used throughout the rest of the text.

Compl. at 7.

The constant siren sounds caused by the elevated crime rates has caused Ms. Alicea extreme paranoia and anxiety. Compl. at 7.

Because of Mayor Ganim's lack of care, the Parks and Recreation Department has allegedly "ignored the care of the looks of the City[,]" resulting in broken sidewalks, and a lack of trees and ground cover. Compl. at 7, 9.

On July 3, 2020, members of the Bridgeport Police Department and American Medical Response emergency medical technicians (EMTs) allegedly arrived at Ms. Alicea's home, after which an incident allegedly occurred. *Id.* During this visit, Bridgeport police officers allegedly mistreated Ms. Alicea, violated her rights, and made her fear for her safety. *Id.* at 5–6. As a result of this incident, Ms. Alicea was rendered "physically disabled, losing the full use of Left hand Limb." Obj. to Def. Obj. re Mot. for Default J. at 1, ECF No. 21 (Nov. 4, 2023) ("Reply re Mot. for Default J.").

In April 2022, Ms. Alicea's sister allegedly died from an overdose of fentanyl. Compl. at 6.

Ms. Alicea has allegedly experienced systemic racism and discrimination based on her disabilities through her interactions with the state and federal court systems, the Department of Social Security, and the BPD. Second Mot. to Enforce J. at 2–9. The Chief State's Attorney's Office and Bridgeport City Council are also allegedly involved in this systemic abuse. Third Mot. to Enforce J. at 1–2.

### B. Procedural History

On July 28, 2023, Mayor Ganim removed the case to the District of Connecticut from the Judicial District of Fairfield at Bridgeport. Not. of Removal, ECF No. 1 (July 28, 2023) ("Not.").

On September 26, 2023, the parties filed a joint Rule 26(f) Report. Rule 26f Report.

On September 27, 2023, Ms. Alicea filed the first motion to disqualify counsel. Mot. to Disqualify Counsel, ECF No. 15 (Sept. 27, 2023).

On October 11, 2023, Mayor Ganim filed an objection to Ms. Alicea's motion to disqualify counsel. Obj. re First Mot. to Disqualify Counsel, ECF No. 16 (Oct. 11, 2023).

On October 14, 2023, Ms. Alicea filed a motion for default judgment, which she amended and re-filed the next day. First Mot. for Default J., ECF No. 17 (Oct. 14, 2023); Am. Mot. for Default J., ECF No. 18 (Oct. 15, 2023) ("Mot. for Default J.").

On October 15, 2023, Mayor Ganim filed an Answer to the Complaint, including affirmative defenses. Answer, ECF No. 19 (Oct. 15, 2023).

On October 16, 2023, Mayor Ganim filed an objection to the motion for default judgment. Obj. re Mot. for Default J., ECF No. 20 (Oct. 16, 2023).

On November 4, 2023, Ms. Alicea filed a reply to Mayor Ganim's objection to the motion for default judgment. Reply re Mot. for Default J.

On November 6, 2023, Judge Dooley denied Ms. Alicea's motion to disqualify counsel. Order, ECF No. 22 (Nov. 6, 2023).

On November 6, 2023, Judge Dooley denied Ms. Alicea's motions for default judgment. Order, ECF No. 23 (Nov. 6, 2023).

On November 21, 2023, Ms. Alicea filed a third motion for default judgment, which also included objections to the Court's orders and a request to remove Judge Dooley from the case. Mot. to Enforce J., ECF No. 24 (Nov. 21, 2023) ("First Mot. to Enforce J.").

On November 22, 2023, the case was transferred from Judge Dooley to this Court. Order of Transfer, ECF No. 25 (Nov. 22, 2023).

On November 29, 2023, Ms. Alicea filed a motion for contempt. First Mot. for Contempt, ECF No. 26 (Nov. 29, 2023).

On December 27, 2024, Mayor Ganim filed a memorandum in opposition to Ms. Alicea's motion for contempt. Mem. in Opp. re First Mot. for Contempt, ECF No. 28 (Dec. 27, 2023).

On January 2, 2024, Mayor Ganim filed a motion to amend the Answer and a motion for judgment on the pleadings. Mot. to Amend/Correct Answer, ECF No. 29 (Jan. 2, 2024); Mot.; Mem. of L. in Support of Mot. for J. on the Pleadings, ECF No. 30-1 (Jan. 2, 2024) ("Mem.").

On January 9, 2024, Ms. Alicea filed an objection to Mayor Ganim's motions to amend the Answer and for judgment on the pleadings. Obj. to Defenses Mot. for J. and Mot. to Amend Answer, ECF No. 32 (Jan. 9, 2024).

On March 7, 2024, Ms. Alicea filed a motion for preliminary injunction. First Mot. for Prelim. Inj., ECF No. 33 (Mar. 7, 2024).

On March 8, 2024, Mayor Ganim filed an objection to the motion for preliminary injunction. Obj. to Mot. for Inj. Relief, ECF No. 34 (Mar. 8, 2024).

On March 11, 2024, Ms. Alicea responded to Mayor Ganim's objection. Emergency Response re Obj., ECF No. 35 (Mar. 11, 2024).

On March 12, 2024, Ms. Alicea filed a second motion for contempt. Second Mot. for Contempt, ECF No. 36 (Mar. 12, 2024).

On March 12, 2024, Mayor Ganim filed a memorandum in opposition to the motion for contempt and requested a protective order. Mem. in Opp. and Request for Protective Order, ECF No. 37 (Mar. 12, 2024).

On March 13, 2024, Ms. Alicea filed a motion responding to Mayor Ganim's opposition to the motion for preliminary injunction and reiterating the complaints expressed in her motions

for contempt, regarding Defendant's failure to respond to interrogatories. Third Mot. re Rule 16 and Rule 37, ECF No. 38 (Mar. 13, 2024).

On March 13, 2024, the Court set a hearing on all pending motions in this case. Order, ECF No. 39 (Mar. 13, 2024). The hearing was set for April 15, 2024 at 11:00 a.m. *Id.*

On March 15, 2024, Ms. Alicea filed a motion to enforce judgment, which included a motion for summary judgment, a request for injunctive relief, and a request for a jury trial. Second Mot. to Enforce J.

On March 17, 2024, Ms. Alicea filed a motion to intervene on behalf of an organization called Spreading Hope Onto Everyone's Sole, Inc. (SHOES). First Intervenor Compl., ECF No. 42 (Mar. 17, 2024). The intervenor Complaint named Donald Trump and the State of New York as Defendants. *Id.*

On March 18, 2024, Ms. Alicea filed another motion to enforce judgment. Third Mot. to Enforce J.

On March 26, 2024, Ms. Alicea filed a motion for contempt and moved to consolidate this case with *Alicea v. Dooley*, No. 3:23-cv-1531. Fourth Mot. for Contempt, ECF No. 44 (Mar. 26, 2024); First Mot. to Consolidate Cases, ECF No. 45 (Mar. 26, 2024).

On March 29, 2024, Ms. Alicea filed a motion to disqualify this Court, a motion for contempt, and a demand for a jury trial. First Mot. for Disqualification of Judges Fraying FRCP, ECF No. 46 (Mar. 29, 2024); Fifth Mot. for Contempt, ECF No. 47 (Mar. 29, 2024); Demand for Trial by Jury, ECF No. 48 (Mar. 29, 2024).

On April 15, 2024, this Court denied Ms. Alicea's motion to disqualify this Court. Order, ECF No. 49 (Apr. 15, 2024). On the same date, the Court held a hearing on all pending motions. Min. Entry, ECF No. 50 (Apr. 15, 2024).

## II.   STANDARD OF REVIEW

### A.  Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, the Court applies the same standard applicable to motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Accordingly, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* A court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002), *cert. denied*, 537 U.S. 1089 (2002). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff has stated a claim upon which relief may be granted, such that it should be entitled to offer evidence to support its claim. *See id.*

While a court must accept as true the allegations in a complaint, this requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

In determining a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), "the court may consider any of the pleadings, including the complaint, the answer, and any written instruments attached to them." 2 Moore's Federal Practice 3D § 12.38

8

(2016); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (explaining that a court need not convert a motion to dismiss into a motion for summary judgment when it considers "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference," and noting that "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint") (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

"[A] party is entitled to judgment on the pleadings only if it has established that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Gioconda L. Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 426–27 (S.D.N.Y. 2013) (internal quotation marks and citations omitted).

## B.  Default Judgment

Under Federal Rule of Civil Procedure 55, a plaintiff may obtain a default judgment against a defendant who fails to plead in opposition to or otherwise defend against the lawsuit. Fed. R. Civ. P. 55(a); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The first step is to seek entry of default. *Id.* "Once default has been entered, the allegations of the complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages." *Coles v. Lieberman, Michaels & Kelly, LLC*, No. 10-cv-484S, 2011 WL 3176467, at *1 (W.D.N.Y. July 27, 2011) (citation omitted). The second step is to seek a default judgment under Rule 55(b). *Green*, 420 F.3d at 104.

The Second Circuit has expressed a strong preference for resolving disputes on the merits. *Id.* "A default judgment is the most severe sanction which the court may apply . . . [and] all doubts must be resolved in favor of the party seeking relief from the default judgment." *Id.*

(internal quotation marks omitted); *Abreu v. Nicholls*, 368 F. App'x 191, 192 (2d Cir. 2010); *see also Theilmann v. Rutland Hospital, Inc.*, 455 F.2d 853, 855 (2d Cir. 1972) ("Dismissal with prejudice is a harsh remedy to be utilized only in extreme situations").

### C.  Preliminary Injunctive Relief

Preliminary injunctive relief "is an extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted). To show entitlement to a preliminary injunction, the moving party must demonstrate: (a) that he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a "likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir. 2011) (internal quotation marks and citation omitted). To demonstrate irreparable harm, plaintiff must show an "injury that is neither remote nor speculative, but actual and imminent." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citations and internal quotation marks omitted*); see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983) (injunctive relief cannot be provided if claimed injury is speculative or remote).

### D.  Contempt

"A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (citing *Paramedics Electromedicina Comercial, Ltd. v. GE*

*Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)). "[A] district court's contempt

power is 'narrowly circumscribed.'" *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 142 (2d Cir.

2014) (quoting *Perez v. Danbury Hosp.*, 347 F.3d 419, 423 (2d Cir. 2003)). "[U]nless the parties

can "'ascertain from the four corners of the order precisely what acts are forbidden,' the order

cannot form the basis for contempt." *Id.* at 143 (quoting *King v. Allied Vision, Ltd.*, 65 F.3d

1051, 1058 (2d Cir. 1995)). Nevertheless, a court may still exercise its inherent authority to

manage its docket and bring a case to resolution. *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).

## III.   DISCUSSION

Ms. Alicea brings three distinct groups of claims against Mayor Ganim. First, she asserts

claims under the Fourteenth Amendment and the Americans with Disabilities Act ("ADA")

stemming from the incident with BPD officers on July 3, 2020. Compl. at 8; Obj. to Answer at 7;

Reply re Mot. for Default J. at 1. Second, she asserts various tort claims stemming from the same

incident, including cruelty to persons, Conn. Gen. Stat. § 53-20; threatening in the second

degree, Conn. Gen. Stat. § 53a-62; outrage;[3] neglect; and false imprisonment. Compl. at 8. Third,

she brings claims under the Fourteenth Amendment for Mayor Ganim's alleged mismanagement

of various Bridgeport city agencies and functions. *Id.* at 7; Obj. to Answer at 2–3, 8–9.

Mayor Ganim has moved for judgment on the pleadings, asserting that Ms. Alicea's

claims are frivolous, based on four theories. Mot.

First, Mayor Ganim argues that Ms. Alicea's claims arising from the July 3, 2020

incident are "inextricably intertwined" with claims raised and dismissed in a previous lawsuit,

*Alicea v. Bridgeport Police Department, et al.*, No. 3:21-cv-1147 (KAD). Mem. at 17. Such

---

[3] Ms. Alicea writes: "I claim a Tort of outrage & seek injunctive relief for the Neglectful & outrageous lack of care to Plaintiff during her time as a citizen, voter & tax payer." Compl. at 8–9.

claims therefore are barred, he argues, by the doctrines of *res judicata* and collateral estoppel. *Id.* at 17–22.

Second, Mayor Ganim argues that Ms. Alicea has failed to state a claim upon which relief can be granted because: (1) she has not alleged that Mayor Ganim had any direct involvement in the events of July 3, 2020; (2) she has not alleged any facts sufficient to state a claim under the ADA, except identifying herself as an individual with a brain disorder; and (3) the tort of outrage does not exist, and, to the extent that Ms. Alicea seeks to plead intentional infliction of emotional distress, she has not she has not alleged facts sufficient to establish the elements of that offense. *Id.* at 22–24.

Third, Mayor Ganim argues that Ms. Alicea lacks standing to sue him for general mismanagement of the city because such standing cannot be conferred by a person's general citizenship, taxpayer status, or vote for a particular candidate. *Id.* at 24. Mayor Ganim also claims that Ms. Alicea lacks standing to sue on behalf of family members who allegedly suffered harms, such as her sister, who allegedly died of an overdose, and her father, who was allegedly abused by the probate court system. *Id.* at 23.

Fourth, and finally, Defendant argues that all of Ms. Alicea's claims stemming from her encounter with the BPD are subject to a three-year statute of limitations, and therefore are untimely because the initial Complaint was served on Mayor Ganim on July 12, 2023, more than three years after the incident with BPD officers on July 3, 2020. *Id.* at 24–26.

The Court will first address a threshold legal consideration raised by Ms. Alicea during the motions hearing on April 15, 2024, *see* Min. Entry, ECF No. 48 (Apr. 15, 2024). Next, the Court will address each of Ms. Alicea's various claims in light of Mayor Ganim's arguments. Finally, the Court will address Ms. Alicea's outstanding motions for default judgment, contempt,

and a preliminary injunction.

At the hearing on April 15, 2024, *see* Min. Entry, ECF No. 50, Ms. Alicea stated several times that this matter should be heard by a jury, and that any other form of resolution would violate her right to trial by jury. But the right to a jury trial, even where explicitly provided by statute, is not absolute. Rather, such a right is contingent on a litigant satisfying certain prerequisites.

First, in order to bring a suit in federal court, a litigant must demonstrate standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("The doctrine [of standing] limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."). Standing requires that: (1) that there exists a real case or controversy, and (2) the litigant is the right plaintiff to bring such case. *See id.* ("[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." (internal citation omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))). It is "settled" that the legislature "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 339 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima[.]").

Second, even where a litigant demonstrates standing, the right to a jury trial is contingent on the existence of some contested factual issue for a jury to decide. *In re Big Apple Volkswagen, LLC*, No. 11-11388 (JLG), 2016 WL 1069303, at *8 (Bankr. S.D.N.Y. Mar. 17, 2016) ("The right to a jury trial is implicated only if the party survives a dispositive motion, such as a

summary judgment motion." (quoting *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 1:20-CV-04767-MKV, 2023 WL 6122905, at *6 (S.D.N.Y. Sept. 18, 2023))). And, where a plaintiff's claims have been addressed and ruled against on legal grounds in the context of a dispositive motion, the litigant cannot argue that they have been denied their day in court. *Cf. Benjamin v. Traffic Executive Ass'n E.R.R.*, 869 F.2d 107, 115 n.11 (2d Cir. 1989) ("Nor can we agree with an implication in plaintiffs' argument, namely, that they have not had their day in court on Counts II through IV. Plaintiffs' claims under those counts were ruled against . . . by the district court pursuant to a motion for summary judgment. Plaintiffs cannot attack summary judgment decisions as inimicable to the seventh amendment. . . . [W]here no issue of fact remains, summary judgment decides only questions of law and does not deprive the losing party of its jury trial right.").

As a result, if there are no contested factual issues that could change the outcome of this case, the Court must dismiss Ms. Alicea's Complaint, and in doing so, would not be abrogating Ms. Alicea's right to a trial by jury. *See In re Big Apple Volkswagen, LLC*, No. 11-11388 (JLG), 2016 WL 1069303, at *8 (Bankr. S.D.N.Y. Mar. 17, 2016) ("The right to a jury trial is implicated only if the party survives a dispositive motion[.]").

## A. *Res Judicata* and Collateral Estoppel as to the July 3, 2020 Claims

*Res judicata* and collateral estoppel are related but distinct doctrines that, under certain circumstances, preclude a party from litigating certain claims or issues that were or could have been raised in a prior action. *See Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999).

Under the doctrine of *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v.*

*McCurry*, 449 U.S. 90, 94 (1980)). *Res judicata* assures the finality of judgments and provides

that "a party may not split causes of action that could be brought and resolved together."

*Vandever v. Emmanuel*, 606 F. Supp. 2d 253, 254 (D. Conn. 2009) (internal quotation marks

omitted); *see also Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir.

1995).

In some cases, *res judicata* may preclude claims by parties who were not involved in the

earlier action, where the asserted claim is identical to one previously litigated and where the

precluded party's interests were represented in the prior suit. *Chase Manhattan Bank, N.A.*, 56

F.3d at 345.  Nonparties may be barred by *res judicata* when there existed "a formal arrangement

for representation in, or actual control of, the earlier action" or in circumstances in which no such

arrangement existed, but "the interests involved in the prior litigation are virtually identical to

those in later litigation." *Id.*

The doctrine of collateral estoppel, or issue preclusion, "provides that 'once a court has

decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation

of the issue in a suit on a different cause of action involving a party to the first case.'" *Faraday v.

Blanchette*, 596 F. Supp. 2d 508, 514 (D. Conn. 2009) (quoting *Burgos v. Hopkins*, 14 F.3d 787,

789 (2d Cir. 1994)). Collateral estoppel "applies when (1) the issues in both proceedings are

identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3)

there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue

previously litigated was necessary to support a valid and final judgment on the merits." *Flaherty*,

199 F.3d at 613 (internal quotation marks omitted) (quoting *U.S. v. Hussein*, 178 F.3d 125, 129

(2d Cir. 1999)). Collateral estoppel is "both narrower and broader than res judicata[,]" in that it

"bars *any* issue that was raised and litigated in a prior proceeding from being subsequently

relitigated in a different, parallel proceeding, provided that the first proceeding offered the litigant a full and fair opportunity to litigate the issue" but it "does not prevent a litigant from raising, in a later proceeding, an issue that he could have, but did not, raise in the first proceeding." *Leather v. Eyck*, 180 F.3d 420, 426 (2d Cir. 1999) (emphasis in original).

The first step in determining whether a prior judgment will have preclusive effect is to assess whether the second suit involves the same claim, or "nucleus of operative fact," as the first suit. *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997). In other words, courts must determine "whether the same transaction or connected series of transactions is at issue and whether the same evidence is needed to support both claims." *Id.* (internal punctuation marks omitted) (citing *Nat'l Labor Relations Bd. v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983)). When making this determination, courts "look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Jaeger v. Cellco P'ship*, 936 F. Supp. 2d 87, 95 (D. Conn.), *aff'd*, 542 F. App'x 78 (2d Cir. 2013) (quoting 91 Restatement (Second) of Judgments § 24(b)).

Courts have, however, expressed hesitation at the prospect of applying preclusion principles mechanically, especially in cases involving important rights or *pro se* litigants who may have limited knowledge regarding the proper means by which to advance their claims. *See, e.g.*, *McNellis v. First Fed. Sav. & Loan Ass'n of Rochester, New York*, 364 F.2d 251, 257 (2d Cir. 1966) ("[A]lthough the principles of res judicata should not be frugally applied, a reasonable doubt as to what was decided in the first action should preclude the drastic remedy of foreclosing a party from litigating an essential issue." (internal citations omitted)); *Flaherty*, 199 F.3d at 616 (declining to apply *res judicata* to preclude the plaintiff's retaliation claims, although they arose

out of the same set of operative facts as his previous due process claim, in part because of the plaintiff's *pro se* status and because the record indicated that the plaintiff may not have understood how to advance his claims within the prior suit).

In this case, Ms. Alicea has raised Fourteenth Amendment, ADA, and tort claims against Mayor Ganim, arising from the July 3, 2020 incident with BPD officers at her home. In a prior case, Ms. Alicea sued the City of Bridgeport ("the City"), the BPD, and BPD Officers Rivera, Swix, Granello, Laracuente, and Cruz under 42 U.S.C. § 1983 for violations of her rights under the First, Fourth, and Thirteenth Amendments. *See Alicea v. City of Bridgeport*, No. 3:21-cv-1147 (KAD), Order on Mot. to Dismiss at 1, ECF No. 84 (July 7, 2022). There, U.S. District Judge Kari A. Dooley dismissed Ms. Alicea's First and Thirteenth Amendment claims because she found that Ms. Alicea had not adequately alleged violations of these rights. *Id.* at 6–7. She also dismissed all claims against the BPD because she found that it was not an entity capable of being sued under § 1983. *Id.* at 5–6. Ms. Alicea's claims against the City were dismissed without prejudice because Judge Dooley found that Ms. Alicea had not adequately alleged facts to establish *Monell* liability against the City. *Id.* at 4. Finally, Judge Dooley granted summary judgment to the Officer Defendants because, after reviewing the body camera footage and other evidence, she found no violation of Ms. Alicea's Fourth Amendment rights and that the officers were entitled to qualified immunity. *Alicea v. City of Bridgeport*, No. 3:21-cv-1147 (KAD), Order on Mot. for Summary J., ECF No. 101 (Sept. 11, 2023).

Mayor Ganim argues that Ms. Alicea's constitutional claims against him in his official capacity are barred by the doctrine of *res judicata* because claims against a government official in their official capacity are effectively claims against the municipality. Mem. at 20. Consequently, because Ms. Alicea's Fourth Amendment claims against the City were previously

alleged and dismissed by Judge Dooley, Mayor Ganim argues that she cannot now advance any

such claims against him in his official capacity. *Id.* Although in this suit Ms. Alicea brings

claims under the Fourteenth Amendment, rather than the Fourth Amendment, Mayor Ganim

contends that her claims "sound in the Fourth Amendment" and therefore should be precluded

regardless. Mem. at 22 (citing *Graham v. Connor*, 523 U.S. 833, 842 (1998) ("Where a particular

Amendment provides an explicit textual source of constitutional protection against a particular

sort of government behavior, that Amendment, not the more generalized notion of substantive

due process, must be the guide for analyzing these claims.")).

Mayor Ganim also argues that the doctrine of collateral estoppel bars all other claims by

Ms. Alicea stemming from the July 3, 2020 incident, since she has already "had a full and fair

opportunity to contest the issue of whether her civil rights—or any other federally protected

rights—were violated by members of the Bridgeport Police Department, or by the City of

Bridgeport, on July 3, 2020." *Id.* at 21.

The Court agrees in part.

Ms. Alicea's Fourteenth Amendment, ADA, and tort claims clearly arise from the same

nucleus of operative facts as her claims in the prior suit—the incident with BPD officers on July

3, 2020—and preclusion principles therefore are generally applicable. *See Interoceanica Corp*,

107 F.3d at 90.

To the extent that Ms. Alicea seeks to raise a substantive due process claim under the

Fourteenth Amendment, stemming from the BPD officers' allegedly unconstitutional entry into

and search of her home, seizure of her person, and use of excessive force, this claim is precluded

under the doctrine of collateral estoppel. Fourteenth Amendment claims premised on this type of

physically intrusive government conduct—through an arrest, a search, or a seizure of a free

citizen—are analyzed under the "reasonableness" standard of the Fourth Amendment, rather than

under a "substantive due process approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989)

("Because the Fourth Amendment provides an explicit textual source of constitutional protection

against this sort of physically intrusive governmental conduct, that Amendment, not the more

generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

As a result, the issue of whether Ms. Alicea's Fourteenth Amendment due process rights were

violated during the incident was fully litigated and resolved by Judge Dooley in *Alicea v.

Bridgeport*.[4] Any substantive due process claims alleged here therefore are duplicative of the

Fourth Amendment claims already litigated.

   Accordingly, the Court will dismiss with prejudice any claims that Ms. Alicea seeks to

advance regarding due process violations flowing from the incident with the BPD.

   The Court does not, however, agree that Ms. Alicea's other claims flowing from the July

3, 2020 incident—ones that were not raised in the previous suit and therefore have not been

addressed on their merits—must also be precluded under the doctrine of *res judicata*. While Ms.

Alicea could have, and arguably should have, raised all other claims related to the incident

within the context of her prior suit, *see Chase Manhattan Bank, N.A.*, 56 F.3d at 345 (one of the

aims of *res judicata* is to assure the finality of judgments and prevent a party from "split[ting]

causes of action that could be brought and resolved together"), the Court is mindful of Ms.

Alicea's *pro se* status, as well as her status as a disabled individual with a traumatic brain injury.

*See* Second Mot. to Enforce J. at 3. And, after examining the record of Ms. Alicea's prior case, it

appears she may not have understood the proper means by which to advance her claims. After

---

[4] Ms. Alicea has appealed Judge Dooley's grant of summary judgment, and that appeal is currently pending before the Second Circuit.

certain claims were dismissed without prejudice and with leave to amend, Ms. Alicea challenged

Judge Dooley's ruling by seeking to file an interlocutory appeal,[5] but she did not file an

Amended Complaint.

The Court therefore will allow Ms. Alicea to pursue these additional claims relating to

the July 3, 2020 incident, notwithstanding her prior suit. *See Flaherty*, 199 F.3d at 616 (declining

to apply *res judicata* to preclude a *pro se* plaintiff's claims and allowing the plaintiff leeway to

assert such claims in a subsequent suit). This determination does not, however, cure the

deficiencies in Ms. Alicea's Complaint and allegations, which the Court now reviews.

### B.  The Potential 14th Amendment Claim

Any constitutional claims that Ms. Alicea seeks to advance must proceed under Section

1983. "Section 1983 provides a federal remedy for 'the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws'" by a person acting under the color of state

law. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105 (1989) (quoting 42

U.S.C. § 1983); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (stating that Section

1983 "provides 'a method for vindicating federal rights elsewhere conferred,' including under

the Constitution") (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

"The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a

right 'secured by the Constitution and laws.'" *Baker*, 443 U.S. at 140 (quoting 42 U.S.C. §

1983). The second inquiry is whether the plaintiff has shown that "[t]he conduct at issue '[was]

committed by a person acting under color of state law.'" *Cornejo*, 592 F.3d at 127 (quoting

*Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Related to the second inquiry, the

---

[5] Judge Dooley denied Ms. Alicea's motion to proceed *in forma pauperis* because her affidavit was incomplete and did not state a claim for entitlement or describe the issues she would present on appeal. *See Alicea v. City of Bridgeport*, No. 3:21-cv-1147 (KAD), Order, ECF No. 88 (July 13, 2022). Although Judge Dooley gave Ms. Alicea thirty days to file a new motion to proceed *in forma pauperis*, no such filing appears to be on the docket.

Complaint must indicate that the challenged action was "fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 936–37 (1982).

To the extent that Ms. Alicea intends to advance an equal protection claim under the Fourteenth Amendment, she has not alleged facts sufficient to support such a claim. Although Ms. Alicea has alleged that she is Puerto Rican, *see, e.g.*, Reply re Mot. for Default J. at 3, and has generally asserted that she has experienced racism, *see, e.g.*, Compl. at 6, these allegations are not sufficient to state a claim. In order to sustain an equal protection claim,[6] a plaintiff must show that: (1) compared with others similarly situated, they were selectively treated; and (2) "such treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir. 1996).

Ms. Alicea also has named Mayor Ganim, in his official and personal capacities, as Defendant, without alleging any facts that could plausibly give rise to liability. If she seeks to sue Mayor Ganim in his personal capacity for constitutional violations stemming from the July 3, 2020 incident, Ms. Alicea must allege facts demonstrating that he was personally involved in those events, presumably through a theory of supervisory liability.[7] Otherwise, to proceed on such a claim against Mayor Ganim in his official capacity, Ms. Alicea must allege facts sufficient to establish *Monell* liability.[8]

---

[6] The Court presumes that Ms. Alicea intends to proceed on a theory of selective enforcement.

[7] "A supervisor may not be held liable under Section 1983 merely because his subordinate committed a constitutional tort." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002); *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (explaining that because Section 1983 imposes liability only upon those officials who actually cause a violation, the doctrine of *respondeat superior* is inapplicable). In other words, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)) (also noting that the Section 1983 violation "must be established against the supervisory official directly").

[8] "A municipality may not be held liable under Section 1983 on a *respondeat superior* theory of liability for its employees' alleged constitutional violations." *Moskowitz v. Great Neck Union Free School District*, No. 20-cv-1659

Accordingly, Ms. Alicea's Fourteenth Amendment claim will be dismissed without prejudice to renewal in an Amended Complaint that cures the various deficiencies identified in this Order.

### C.  The Potential ADA Claim

"Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *U.S. v. Georgia*, 546 U.S. 151, 153 (2006) (citing 42 U.S.C. § 12132). This statutory provision "authorizes suits by private citizens for money damages against public entities that violate § 12132." *Id.* at 154. Public entities include "state and local governments, their instrumentalities, and commuter authorities." *Pierce v. Fordham Univ., Inc.*, 692 Fed. App'x 644, 646 (2d Cir. 2017).

Under Title II, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 153 (2d Cir. 2013) (citing 28 C.F.R. § 35.130(b)(7)). To prove a violation of Title II of the ADA, a plaintiff must establish that: "(1) that [they are] a "qualified

---

(KAM) (SIL), 2021 WL 4268138, at *10 (E.D.N.Y. Aug. 4, 2021) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). A municipal entity may only be held liable for an employee's alleged violation if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental custom even though such a custom has not received formal approval through [ ] official decisionmaking channels." *Monell*, 436 U.S. at 690–91. In order "[t]o bring a Section 1983 claim against a municipal defendant, [therefore,] a plaintiff must establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy." *Moskowitz*, 2021 WL 4268138, at *10; *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

individual" with a disability; (2) that [they were] excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [their] disability." *Id.*

Ms. Alicea has alleged only that she is a disabled individual with a brain disorder. Reply re Mot. for Default J. at 1–2; Compl. at 8; Second Mot. to Enforce J. at 3. She has not alleged any additional facts sufficient to suggest a specific violation of the ADA. Additionally, Ms. Alicea has named only Mayor Ganim as a Defendant; yet, claims under the ADA must be brought against a municipality or other public entity, and may not be brought against individual defendants. *See U.S. v. Georgia*, 546 U.S. at 154 (42 U.S.C. § 12132 "authorizes suits by private citizens for money damages against public entities").

Accordingly, Ms. Alicea's claim under the ADA must be dismissed because she has failed to plead the elements of a violation or to name an appropriate defendant. The Court will allow Ms. Alicea to renew her ADA claim in an Amended Complaint, provided that she can cure the various deficiencies identified here.

### D.  The State Tort Claims

Ms. Alicea has brought various tort claims, including cruelty to persons, Conn. Gen. Stat. § 53-20; threatening in the second degree, Conn. Gen. Stat. § 53a-62; outrage; neglect; and false imprisonment. Compl. at 8. It also appears that she intends to allege intentional infliction of emotional distress. *Id.* at 8–9 (stating that she has suffered emotional, physical, and mental distress due to Mayor Ganim's alleged mismanagement of Bridgeport).

#### 1.  *Failure to State a Claim*

The Court begins by noting that there is no tort of outrage. Accordingly, that claim is dismissed with prejudice.

As to the other claims, Ms. Alicea has not pled facts to meet the elements of the various torts she alleges. Moreover, because, at this juncture, Ms. Alicea has alleged no viable federal claims, the Court declines to retain supplemental jurisdiction over Ms. Alicea's remaining state law claims.[9]

To the extent that Ms. Alicea can amend her federal claims to cure the deficiencies noted above, she may re-allege her state law claims, except for the claim of outrage, at that time, provided that she can allege facts sufficient to support such claims.

### 2. Timeliness

To the extent that Defendant argues that all of Ms. Alicea's claims stemming from the July 3, 2020 incident are time barred, the Court does not necessarily agree.

On March 19, 2020, Governor Lamont issued an executive order, Executive Order 7G ("Order 7G"), as part of a series of orders meant to address the COVID-19 pandemic. Order 7G provided, in relevant part, that "time requirements, statutes of limitation or other limitations or deadlines relating to service of process, court proceedings or court filings" would be suspended "for the duration of [the] public health and civil preparedness emergency[.]" *Id.* ¶ 2. The suspension of statutes of limitations terminated on March 1, 2021 under Executive Order 10A.

---

[9] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018). "When § 1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.* at 86.

As no federal claims remain at this time, the Court will decline to exercise supplemental jurisdiction. Balancing considerations of judicial economy and fairness, the Court finds that Ms. Alicea's tort claims raise quintessential questions of state law, and dismissal "will procure for the parties 'a surer-footed reading of applicable law' with respect to these claims." *Klein & Co. Futures v. Bd. of Trade of N.Y.C.*, 464 F.3d 255, 263 n.5 (2d Cir. 2006) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Executive Order 10A ¶ 5 (February 8, 2021).

"Order 7G tolled the applicable statute of limitations on March 19, 2020, and [] the paused statutory periods 'resumed from the point where they had been paused' when Governor Lamont's suspension expired." *Esposito v. Aldarondo*, No. 3:22-cv-621, 2023 WL 2228412, at *4 (D. Conn. Feb. 24, 2023). Connecticut courts have applied the tolling established by Order 7G to claims under Section 1983, as well as tort claims. *See id.* ("borrowing the state tolling rule from Order 7G 'bolsters the policy aims' of § 1983, furthering 'the goal of deterring abuses of power by state officials' by requiring Defendants 'to answer for the alleged rights violations' and granting [the plaintiff] his 'day in court to seek compensation for [his] alleged constitutional deprivation.'" (quoting *Connelly v. Komm*, No. 3:20-cv-1060 (JCH), 2021 WL 5359738, at *4 (D. Conn. Nov. 16, 2021))); *Anderson v. Lewis*, No. 3:20-cv-370 (VAB), 2023 WL 6378924, at *6–7 (D. Conn. Sept. 29, 2023) (applying Order 7G to claims under Section 1983); *Abbott v. Connecticut Tank Removal, Inc.*, No. FBT-CV21-6109940-S, 2022 WL 1018431, at *2 (Conn. Super. Ct. Feb. 10, 2022) (applying Order 7G's tolling to all claims brought by the plaintiff, including emotional distress claims, because "nothing in the text of Executive Order 7G conditions the suspension of statutes of limitations or indicates that the suspension will only apply on a case-by-case basis"); *Pwalhey Partner, LLC v. Dell'Olio*, No. DBD-CV-22-6042853-S, 2022 WL 17592152, at *4 (Conn. Super. Ct. Dec. 6, 2022) (applying Order 7G to extend the statute of limitations for the plaintiff's negligence claim).

Whether such tolling is applicable here is not a question the Court need resolve definitively at this point. To the extent that Ms. Alicea seeks to amend her Complaint and re-allege her claims, the issue of timeliness can be addressed at that time.

### E.  Claims Related to the Fentanyl Epidemic

In order to demonstrate standing, a plaintiff must show: (1) they have suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

In the context of claims under Section 1983, only those individuals directly impacted by the alleged constitutional violation are deemed to be injured, so as to confer standing. In other words, "Section 1983 does not recognize a claim on behalf of one person arising from a violation of another person's rights," *see T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist.*, No. 11-CV-5133 VB, 2012 WL 860367, at *3 (S.D.N.Y. Feb. 27, 2012) (citing *TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 590 (S.D.N.Y. 2011)), except in cases "[w]here minor children are the real parties in interest [and] parents appropriately bring litigation on their children's behalf." *Marino v. Chester Union Free Sch. Dist.*, 859 F. Supp. 2d 566, 568 (S.D.N.Y. 2012) (collecting cases); *see also Moskowitz v. Great Neck Union Free Sch. Dist.*, No. 20-CV-1659 (KAM) (SIL), 2021 WL 4268138, at *15 (E.D.N.Y. Aug. 4, 2021), *report and recommendation adopted*, No. 20-CV-1659 (KAM) (SIL), 2021 WL 3878777 (E.D.N.Y. Aug. 31, 2021).

Ms. Alicea has alleged that Mayor Ganim's failure to properly manage the fentanyl epidemic in Bridgeport led to her sister's death by overdose in April 2022 and violated her Fourteenth Amendment rights. Compl. at 6–7.

Mayor Ganim argues that Ms. Alicea lacks standing to bring such a claim because "third party individuals cannot sue for violations of the civil rights of others." Mem. at 23.

26

The Court agrees. Ms. Alicea does not have standing to bring a constitutional claim on behalf of her sister.

Accordingly, this claim will be dismissed with prejudice.[10]

### F. Claims Related to the Probate Court

Ms. Alicea has raised concerns about the administration of probate courts in Connecticut, *see, e.g.*, Compl. at 4, Obj. re Obj. to Mot. for Default J. at 2, but has not alleged any specific facts to support a particular legal claim. In any event, as Defendant notes, Mayor Ganim does not appear to have have any role in overseeing the probate courts, nor any power over them. *See* Conn. Gen. Stat. §§ 45a-77, 51-5a (explaining that the probate courts are overseen by the Probate Court Administrator, who reports to the Chief Court Administrator). And Ms. Alicea has not alleged any facts to suggest otherwise.

The Court thus cannot find any basis for any claim against Mayor Ganim stemming from alleged abuses effected by the probate court.

Accordingly, Ms. Alicea's claims regarding the administration of probate courts will be dismissed with prejudice.

### G. Other Claims Regarding General City Management

A plaintiff's status as a citizen or taxpayer is not sufficient to confer standing to challenge general acts of government through a lawsuit. *See, e.g.*, *Commonwealth of Mass. v. Mellon*, 262

---

[10] The Court dismisses certain claims with prejudice because, as discussed at length in the legal analysis above, the caselaw suggests that no version of these claims could survive, and amendment would therefore be futile. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995))); *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("One appropriate basis for denying leave to amend is that the proposed amendment is futile. . . . An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Fed. R. Civ. P.] 12(b)(6)."). This standard has been applied to all of the claims dismissed with prejudice, even where the Court does not further elaborate on the basis for doing so.

U.S. 447, 488 (1923) ("We have no power per se to review and annul acts of Congress on the ground that they are unconstitutional. That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such an act. Then the power exercised is that of ascertaining and declaring the law applicable to the controversy.").

And, while "municipal taxpayers have standing to challenge allegedly unlawful municipal expenditures[,]" *see U.S. v. City of New York*, 972 F.2d 464, 471 (2d Cir. 1992) (collecting cases), this standing is limited to claims involving a concrete injury to the taxpayer due to a "challenged activity involv[ing] a measurable appropriation or loss of revenue." *District of Columbia Common Cause v. District of Columbia*, 858 F.2d 1, 5 (D.C. Cir. 1988). "[T]he gist of the inquiry must be whether the complaining party has '[a]lleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217–18 (1974) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). In other words, "[t]he party who invokes the power must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." *Commonwealth of Mass.*, 262 U.S. at 488.

"A taxpayer's action can meet this test . . . only when it is a good-faith pocketbook action." *Doremus v. Bd. Of Ed. of Borough of Hawthorne*, 342 U.S. 429, 435 (1952). Where the grievance sought to be litigated "is not a direct dollars-and-cents injury[,]" there is "no such direct and particular financial interest[.]" *Id.* Litigants may not use "a feigned issue of taxation"

to confer standing where it would not otherwise exist. *Id.*

Ms. Alicea has expressed dissatisfaction with a number of municipal activities and

functions, including the management of Bridgeport city parks, the ubiquity of sirens from the

city's various emergency services, DCF's alleged mishandling of cases, and the alleged murder

of a child by BPD officers. Compl. at 4–9. She has not alleged any personal connection to any of

these issues, beyond her status as a taxpayer and resident of Bridgeport who voted for Mayor

Ganim. *Id.* at 4, 8.

Here, Ms. Alicea has not challenged a municipal expenditure, nor has she alleged any

form of direct injury.

Accordingly, she does not have standing to challenge Mayor Ganim's general

management of Bridgeport, and these claims must be dismissed with prejudice.

### H. Other Outstanding Motions

#### 1. Motion for Default Judgment

The Second Circuit has expressed "a strong preference for resolving disputes on the

merits" and has noted that "default judgment is the most severe sanction which the court may

apply." *New York*, 420 F.3d at 104. Although district courts retain discretion in ruling on motions

for entries of defaults and default judgments, *see Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95

(2d Cir. 1993), such discretion is "circumscribed." *City of New York v. Mickalis Pawn Shop,*

*LLC*, 645 F.3d 114, 129 (2d Cir. 2011). "Default judgments are generally disfavored and are

reserved for rare occasions." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374

F.3d 158, 168 (2d Cir. 2004) (internal quotation marks omitted). A "trial court's desire to move

its calendar should not overcome its duty to do justice." *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir.

1995) (citations omitted). Accordingly, in ruling on a motion to vacate a default judgment, all

doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits. *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001).

Ms. Alicea has moved for default judgment because Mayor Ganim failed to respond to the Complaint in accordance with Federal Rule of Civil Procedure 88(c). Am. Mot. for Default J. at 1.

In response, Mayor Ganim admits that his Answer was late. Mem. in Support of Obj. to Mot. for Default J. at 3, ECF No. 20-1 (Oct. 16, 2023). He notes, however, that he has actively and consistently participated in the litigation through preparation of the Rule 26(f) report and the filing of various motions and briefs. *Id.* at 2–3. Moreover, counsel notes that he experienced serious medical issues and had to be hospitalized for inpatient surgeries on two occasions during the relevant time period. *Id.* at 4. Finally, Mayor Ganim emphasizes that Ms. Alicea will not be prejudiced by declining to grant default judgment. *Id.*

The Court agrees that default judgment is inappropriate in these circumstances.

Here, although Defendant was late to file the Answer, he actively engaged in the ongoing litigation and cannot be said to have defaulted generally. Nor is there any suggestion that the delay in answering the Complaint was willful or malicious. Finally, Ms. Alicea has identified no harm that she suffered as a result of Defendant's late Answer. In short, there is nothing to suggest that "the most severe sanction which the court may apply" would be appropriate in this instance. *New York*, 420 F.3d at 104.

Accordingly, the Court will deny Ms. Alicea's motion for default judgment.

### 2. *Motions for Contempt and Motion for Injunctive Relief*

Ms. Alicea has filed five motions for contempt. *See* ECF Nos. 26, 36, 38, 44, and 47. She

also filed a motion for injunctive relief seeking "the contempt of Attorney Kascak" for "tampering with [her] Due Process[.]" Mot. for Inj. Relief at 1, ECF No. 33 (Mar. 7, 2024). Among other allegations regarding the litigation process, Ms. Alicea alleges that attorneys for Defendant have "belittled her" and lied during the discovery process, and that they have failed to answer her interrogatories or otherwise comply with her requests for production. *See* First Mot. for Contempt, ECF No. 26 (Nov. 29, 2023); Second Mot. for Contempt, ECF No. 36 (Mar. 12, 2024).

Mayor Ganim has objected to these motions, noting that Ms. Alicea's discovery requests did not conform to various requirements under the Federal Rules of Civil Procedure; that the thirty-day time period for responding to the requests had not yet lapsed when she filed the first motion for contempt; and that the requests were "highly objectionable." Mem. in Opp. and Req. for Protective Order at 2, ECF No. 37 (Mar. 12, 2024).

Mayor Ganim has also sought a protective order because "[n]one of Ms. Alicea's interrogatories or requests for production . . . have anything to do with any claim brought in her Complaint." *Id.* at 3.[11]

Because, at this point, none of Ms. Alicea's claims will proceed as alleged, the Court will deny these motions as moot.

## IV.    CONCLUSION

For the foregoing reasons, Ms. Alicea's motion for default judgment is **DENIED**. The motions for contempt, and motion for preliminary injunction are **DENIED as moot**.

---

[11] *See* Pl. Interrogatories at 11, ECF No. 36-1 (Mar. 12, 2024) (requesting in an interrogatory that Defendant: "Admit that there is racism and forced enslavement of our agriculture, its people and lands via hostile takeover of Colonization via war culture that has been taught via history of the Tale of The Nina, The Pinta, and The Santa Maria. Confirm if Defendant understood this history fact of homeland invasions and the genocide of the Native Indians including the Plaintiff's ancestral Carribeans peoples.").

Mayor Ganim's motion for judgment on the pleadings is **GRANTED in part and DENIED in part**. The case will proceed as follows:

Ms. Alicea's claims relating to Mayor Ganim's alleged mismanagement of Bridgeport, her sister's death, and the probate system are **DISMISSED with prejudice**.

Any substantive due process claims arising from the incident on July 3, 2020 are **DISMISSED with prejudice** under the doctrine of *res judicata*.

Any equal protection claim arising from the incident on July 3, 2020 is **DISMISSED without prejudice to renewal**, provided that Ms. Alicea can amend her claim to cure the deficiencies noted in this Order.

Ms. Alicea's claim under the Americans with Disabilities Act is **DISMISSED without prejudice to renewal**, provided that Ms. Alicea can amend her claim to cure the deficiencies noted in this Order.

Ms. Alicea's tort claims are **DISMISSED without prejudice to renewal**, provided that any Amended Complaint alleges a viable federal claim arising from the July 3, 2020 incident, and provided that she can amend her claims to cure the deficiencies noted in this Order.

To the extent that Ms. Alicea can remedy the deficiencies identified herein for any of the claims not dismissed with prejudice, she will have until **May 31, 2024** to file an Amended Complaint. If an Amended Complaint is not filed by **May 31, 2024,** and no leave has been sought to extend that time period before that date, the Court will dismiss all of her potentially remaining claims with prejudice and direct the Clerk of Court to close this case.

**SO ORDERED** at New Haven, Connecticut, this 20th day of April, 2024.

*/s/ Victor A. Bolden*

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE